for the motion Telebeam Communications Corp. Good morning. May I reserve a minute for rebuttal? I'll give you a minute. Thank you so much. May it please the court, this appeal involves serious violations of the Federal Telecommunications Act, or TCA, arising from the city's allowing only one company to provide a range of telecommunications services on the public rights of way. Judge Carney granted Telebeam's emergency motion in joining the city from taking certain actions and ordering the parties to maintain their relationship under a holdover provision, which between them have been in force for about sixteen years. We ask that this court continue Judge Carney's order pending determination of the appeal. Do you agree that you have to satisfy the substantial likelihood standard? Your Honor, I think the status quo has actually been maintained. The only thing that has nothing corporeal, nothing in the real world has changed. Telebeam has remained in possession of its equipment and has continued to operate it. And I can point to some cases where this court, in somewhat similar circumstances, has treated the status quo as maintained even though there had been some intervening things that appeared to affect circumstances. Do you have to show a likelihood of success on the ground? We have to show, yes, I think we do have to show that. I don't think we have to show any heightened standard beyond that. Now, in terms of the FCC's treatment of these cases, is it your interpretation that the FCC has concluded that public rights of way management apply? The FCC has taken a much more limited view on that issue than the city would like to take. They have been fairly clear that when a municipality steps beyond things like when can you rip up the streets, what kind of equipment can you use, into the realm of regulating telecommunications, which is what we think has happened here, that that's impermissible. And that goes back quite a ways. It's an even starker case now in light of the net neutrality order from last year, which addresses the bulk of what's involved in this franchise, Wi-Fi, broadband, Internet-related services, and which have now been placed under Section 253 by the FCC's order, under City of Arlington v. FCC. A Supreme Court case from 2013 decided after this Court last looked at TCA issues, and well after TCG, we think there must be deference under Chevron paid to what the FCC has done. So if you were to prevail here in this proceeding and it went to a merits panel, the merits panel could seek the views. Could it not of the FCC? Yes, Your Honor, it could. Do you want to just sort of marshal quickly your argument about why you have a likelihood of success on that argument? I'd be happy to do that, Your Honor. The City's position essentially takes a view of the TCG v. White Plains case, which is the seminal case in this circuit. We take a different view. The Court in the past has looked at those issues. It did it in City of Rome. It did it in NextG, and said all that Congress intended was to give the City some power to deal with those rights-of-way issues, like you can't drive a truck through at 2 a.m. to rip up the street. It didn't want them to interfere with telecommunications regulation. And the fact that the appellees keep referring to the point of this enterprise being to, quote, bridge the digital divide, close quote, shows very clearly this is about telecommunications regulation, and that's impermissible. That takes it out of the safe harbor under 253C and means it violates 253A because it's an effective barrier to entry. Now, Newphone quotes a statement from the background section in Global, as you know, and I quote, that the law applies only to City property. Payphones on private property are not subject to the City's regulatory scheme, and concluded, and I quote, that by its plain term, Section 253C insulates any such scheme from the TCA's preclusive effect. Why isn't that a problem for you? Well, Your Honor, I think that is an expression that exaggerated and expanded the holding in TCG. TCG itself, if I may read a short quotation, said, and this is at 305 F3rd and 82, for example, a transfer limitation, if applied neutrally to all franchisees, might permit rejection of a transferee on the basis of insufficient assurance of ability to pay reasonably imposed fees for use of the right-of-way. However, because White Plains cannot legitimately turn away any, that's in quotes, provider of telecommunications services, Section 253A, a provision of sweeping breadth whose main purpose is to force each new telecommunications provider to receive White Plains' blessing before offering services, is invalid, close quotes. That decision touched on several issues. One was that White Plains was seeking to regulate private property issues, but it also said that a provision in the charter, in the proposed franchise, rather, from White Plains, which would have required franchisees to waive their right to challenge provisions, was invalid. It also said that the fact that White Plains purported to retain complete discretion was invalid, again, because it had the effect of being a barrier. Those were independent bases for concluding 253A was violated without regard to the fact that the telecommunications restriction extended to private property. Now, you say that the, at least as I understand it, that the district court heard by addressing only payphone service. Yes, Your Honor. And could you flesh that out a little bit? Okay. Well, in the very first sentence of the district court's opinion, and it's repeated later, it refers to Telebeam as a provider of payphone services, but the proposal that Telebeam put in in response to the 2014 RFP proposed the same set of services that are now being offered by the recipient of the franchise, CityBridge. So we have tried in the past. We have, in the past, with DeWitt's permission, provided some of these other services. We've been keen to update and expand what we do. So it goes well beyond that. The franchise called for these internet, Wi-Fi, broadband services to be provided. So I think it moves it into a different context than merely payphones. With the permission of the presider, may I ask a question? Further question? Supposing we were to lift the temporary stay and give an expedited appeal and you win on appeal, will it be possible to put Humpty Dumpty together again? Yes, I think it will. I think what we've tried to do, going back to the first amended complaint, is to leave as much discretion there for the city. All the city really has to do is put in place authorizing resolutions that are consistent with TCA, that don't block someone. But nothing in the interim would happen that would make it difficult or impossible to return you to the status quo. I think he has a strong view on that. My colleague often does. You're right, though, Your Honor. My colleague, Mr. Brill, for the record. The things could continue as they are, with both Telebeam and CityBridge operating the equipment they now have. Even though there's no stay in place? No, if the stay remained in place. I'm asking the opposite. Oh, I'm sorry. I beg your pardon. That accounts for Mr. Brill's reaction. Yeah, no, unless that injunctive relief pending appeal is there, we're cooked. We'll never be able to put it back together. That's correct. We won't be able to get money damages from the city under Section 253. Our facilities will have been altered. Thank you. Thank you very much, Your Honor. Perhaps you can answer my humpty-dumpty question. I'm Kathy Park for the City Defendants. I'm interested, and I don't want to lose the thread of whether a failure to continue the stay will essentially mean the ballgame is over to change to another benefit. Your Honor, I wouldn't, with respect to any relief that Telebeam would be entitled to, were it to prevail on appeal. The problem with this motion is that Telebeam essentially seeks a benefit that it wouldn't be able to obtain if it were to succeed on the merits. Could you answer the judge's action? Could you put them back together again? There may be a way of answering that. Yes. Let me clarify my previous response. To the extent that Telebeam asserts its imminent denies, then, yes, we agree that if it ceased to exist, we wouldn't be able to put it together again. But the reason why that doesn't entitle Telebeam to the relief that it is seeking on this appeal is because the loss of business or its purported imminent demise is completely divorced from any legal basis or any violation of the Federal Telecommunications Act. So the answer to Judge Sack's question is that, from your client's point of view, it doesn't matter whether they can put it back together again? That's right. Because the loss of business is not attributable to the relief that it would be able to obtain on appeal, and it's completely divorced from any violation of the Federal Telecommunications Act. So there would be irreparable injury. It's just that, in your view, they're not on the merits entitled to relief. That's right. I mean, if you consider it from—perhaps this is an illustration that might be helpful. If it was not Telebeam but another operator who didn't have a prior payphone franchisee who was bringing this action and that operator needed a stream of revenues during the pendency of appeal to keep afloat, that company would have no entitlement to an order from this court allowing it to have a stream of revenues simply so that it can stay afloat to pursue this appeal. All right. If I may just—and I'm sorry to interrupt you, but back us up and tell us, what is it that the city wants that the appellants say, we want you not to do that yet until we have our day in court? The city wants this court to recognize that the prior franchise agreement for payphone operations has expired, and the city would like to move on and move forward with a new franchise where—regarding its Wi-Fi program. Gotcha. So the prior—from the city's perspective, the prior franchise agreement having expired, the city's rights to do with Telebeam are what? The city's rights— To come in and just Telebeam gets out, leaves all its equipment in place, Telebeam gets out and— To follow through with the termination provisions in the prior franchise agreement, which those provisions provided for an option for Telebeam to take its removable equipment and take it elsewhere, but because Telebeam has forfeited that option, right now the above-ground equipment, the city is entitled to transfer that over to CityBridge, its designee, and as for the underground conduit or the underground equipment, that reverts back to the city. That now belongs to the city under these provisions. So if the stay is not in place, then the city's going to come in and do what you've just described? That's right, but if— How do they put it back together if at some point, I suspect in the relatively near future, a panel of this court says, whoops, no, the city can't do what it claims to be able to do under the franchise agreement? Assuming Telebeam were to prevail on appeal, what it would be entitled to is perhaps for the city— perhaps it would be an order directing the city to restart, start from scratch, invalidate the CityBridge franchise, and move forward with a scheme with multiple franchises. And if Telebeam were to win a franchise under that new scheme, we would simply revert those locations back to Telebeam if Telebeam were to win a franchise agreement. Would the city rather have the imprimatur of this court going forward on whatever it is that's worked out between the two rather than have that hanging out there and everybody in limbo? No, Your Honor, because in our view, we are confident in the merits on our end. And there's an important public interest here because what keeping the status quo in place would do would forestall the delay or forestall the deployment of our Wi-Fi kiosk. And there's simply no legal entitlement for Telebeam to occupy spots in our inalienable property for the pendency of this appeal. What about an expedited appeal? I mean, an expedited appeal gives you more reason, consideration, provides the option of a panel or so to go in this direction to seek the views of the FCC. Wouldn't that make more sense? Your Honor, if this court decides to impose a stay, we would, of course, want an expedited appeal and we would follow through with that. But our position is that there's simply no entitlement, no legal entitlement for Telebeam to force the city to extend a contract that has now expired. I just want to make sure that it must be clear to you. Let me make sure. That is that you might very well be right. It's the district court fully familiar with the case. They said you were right. They declined to give a further, he or she declined to give a further stay. That's probably right. We're just sitting here as a motions court. We don't have to begin to have what the district court had. I hope we don't begin to have what a full panel hearing that panel would have. And it's a little difficult for us with this limited knowledge to do something, no matter how clearly right it is to do something, which is going to kind of end the matter forever rather than letting another panel take a look at it. It's a difficult thing to do. Especially when you've conceded that there is irreparable injury. Yes, Your Honor, there's irreparable injury in the sense that it's not tied to any entitlement that Telebeam would be able to achieve, even if it were to prevail on appeal. There's nothing that entitles Telebeam to continue a stream of revenues, advertising revenues, so that it can simply stay in business to pursue its appeal, when it has nothing to do with the claims that it's pursuing under the Federal Telecommunications Act. To the extent that they are objecting to the seizure of equipment, that's separate from allowing Telebeam to operate those or continue advertising on those structures. And to the extent that Telebeam is challenging the City Bridge franchise, that simply gives Telebeam an opportunity to participate in perhaps a new scheme that is directed by this court. But it does not entitle Telebeam to extend an expired franchise of an industry that is now based largely on outdated technology and to occupy spots in the City's property that is inalienable. It's a property that cannot be sold, it cannot be leased. It would essentially allow Telebeam to squat on the City's streets, on the public rights-of-way. Let me ask a question that may be a little disparaging as a question. Were we to disagree with you and put a stay in, how quickly could both sides get this thing fully briefed? Because I would think that if we were to give it, the other side of this is it would have to be extremely, just as quick as humanly possible at the usual pace of a Second Circuit appeal. Telebeam has already submitted a 32.1 letter proposing a schedule where I believe it would perfect in early October and the City's brief would be due in November 14th. We would just ask that the City's brief be due on November 23rd, just because the time period that is allotted to the City falls right in the heart of the Jewish holidays. So we would just ask for the City's brief to be due on the 23rd of November. It doesn't sound very expedited to me. I just expedited an appeal from last week, it's going to be heard next week. Your Honor, if the City, if we are prepared to comply with any type of expedited schedule that the Court orders. You said a lot on a briefing schedule. The assumption, as Judge Sack put it, that the Court is issuing a stay. The City's happy with that. You're the ones who are fighting this, so I don't think we're going to argue with you. We'll decide that afterwards. We haven't discussed, we don't know. Right, Your Honor. But I'm just saying, Judge Hall said, it really is up to you, since you're the one who would want expeditions. I would think, again without having spoken to my colleagues, we would be inclined to have a schedule that was as fast as you and your adversaries can handle. If you say November 23rd, and that suggests that it's not the dire emergency that there might be, then it's up to you. Your Honor, we're prepared to, if Tel Aviv needs two weeks to perfect, we're prepared to file a brief within two weeks of that date. Okay, thank you. Thank you very much. There's one. Yes, there's one. Yes, yeah. Did you want to ask her another question? No, I was going to ask if perhaps, why don't we hear the argument and then maybe a procedural thing at the end. Yeah, go ahead. Good morning, Your Honor. Ken Friedman for the Appellee City Bridge. Judge Sack, I would say, in answer to your first question two rounds ago, the ballgame already is over. The franchise has expired. What the appellant is here before you is for a very limited relief to allow or to freeze the city from acting under its rights under the old franchise agreement. That is not irreparable harm. To answer the panel chair's question, there is no irreparable harm here. The relief that's being sought here is to prevent the seizure of movable assets from the city sidewalks. Those assets have a value. If it turns out that that seizure was unlawful, they have recourse in an action at law for that unlawful taking. It's already taken. Forgive me? No, it's not. I mean, nothing's been done because the taking or the operation of the asset disposition on the old franchise agreement is rather murky. But the question of the franchise having been expired is self-executing. And that provision in the old agreement is not something that's being challenged. And it's not something that the appellant has said violates the telecommunications act. So the franchise has expired. They have no right to be out there. The city, what they have a right to, the appellant does, is recourse to the asset disposition provisions of their agreement. And that's what the city has been told not to exercise its rights under, under the order on the expedited appeal. So the phones are still on the street. The kiosks, the old phones are still on the street in whatever state of repair that they are. Those phones. Are they operating anymore? Yes, they were operating. All right. So what happens? We deny a further stay. What then happens out on the streets? Those phones would be transferred to city bridge. And? And they'd be continued to operate, and then they would be redeployed as part of the link deployment program. But that's, and that's exactly what the franchise agreement that they agreed to 15 years ago contemplates. That they made $171 million off of as well, contemplates. And that's what they bargained for. And they're asking this court now to rip up that agreement and create an entirely new agreement. There is no irreparable harm because there's already been a market established for what those assets are worth. And if it turns out that that's an unlawful taking, they could be compensated. In fact, the agreement has provisions for an appraiser to come in to determine what the fair market value of those assets are. What's the source of the law that allows for compensation? I would say it's an unlawful taking with a breach of the contract. They themselves have exhibited. Is it a constitutional due process Fifth Amendment? I don't see it. That could be. New York, I'm sure, has an analog to that as well. And that could be, I believe that is available in a state court action and an action in law. And therefore. But it's not within the agreement itself. It's not within the franchise agreement. It's not within the franchise agreement. And I do agree that Section 253 and the entire TCA doesn't create a private right of action there. But we're not talking about the TCA here. This is a question of contract interpretation and what the 1999 franchise agreement means. And all the discussion this afternoon, or this morning rather, about the merits, that's not really apropos in my mind to what was before the court today. Their application for an injunction preventing the city from exercising its rights under Article 12 of the 1999 franchise agreement. Because the franchise has already expired. And that ball game is over, Your Honor. Oh, so how does that, your argument about the franchise having already expired, relate to, as I understand it, in 2014, Titan, which. . . Actually, I think it was 213. 213, which was a managing member of City Bridge. Of my client, that's correct. And as I understand it, they said at the time that any single franchising scheme for providing telecommunications services on the city's public rights of way would not be competitively neutral or non-discriminatory as required by Section 253C. Your Honor, that's a question that goes prospectively to the merits of what the applicant seeking here or the appellant is seeking. It also goes to a question of the validity of the PCS franchise under the Telecommunications Act. Those questions, with all due respect, are not before you today. Because this isn't about the application of the TCA and whether the new franchise violates it or not. This is whether or not the city can exercise its right under the old contract, under the old franchise agreement. And once again, not to beat a dead horse, but there is a monetary compensation that could be available if it turns out that this taking, seizure, whatever, was unlawful. And there's a market for it, and it can be determined. So I think that the application for, and we believe that the application for injunctive relief here fails on that prong alone. We also believe, as you balance the equities, that that should also favor denying the injunction. We've been injured, and our papers point out how much revenue has been lost. And revenue continues to be lost having to work around Tel Aviv's locations. And that not only affects us and the harm to my client, it also harms the public interest. Because remember, the public is not paying for this. In terms of an expedited appeal, are you all in agreement as to the schedule? I have not agreed to a schedule, Your Honor. I've only agreed that the appeal should be expedited. And it should be taken as fast as possible. And I think that the appeal should be expedited regardless of whether this court grants the relief that's before it today or not. Even if the injunction is denied, I still believe the appeal should be expedited. Because this issue has languished long enough, and it's impeding the progress of what the city needs. A very important public program that federal government and the city government has made it their policy to close this digital divide. And this is what we're trying to do. And I think that this sort of cloud over the program needs to be alleviated as soon as possible. So we're in favor of an expedited appeal. I haven't discussed that with the other side yet as to how short it should be. But we also believe that there's no grounds to grant the injunction, and we still want the appeal to be expedited. Understanding that, but in order that we're not imposing on you three sets of folks a schedule that you otherwise could prepare in the back room here and give to us. Can the three of you sit down and give us a schedule that you would agree to? Yes, Your Honor. We've had no problem working collegially in the past, and we could do that. Absolutely. Can we get that today? Absolutely. Yes. How about 1 p.m. today? That's fine. Thank you, Your Honor. You wanted one minute. Thank you, Your Honor. I'll have to hold you to the one minute. I appreciate that. I want to return to something that Mr. Friedman just mentioned, that 1999 franchise and its termination provisions. That's part of what was challenged in our complaint. The provision he mentions about a value to be determined by mediation, at the end of the day, that agreement says, and the do-it commissioner can accept it or reject it in her discretion. There's no right there. This is most definitely about TCA. The city has tried to carve out a set of rules different than what TCA, it's clear from its legislative history intended, different from what the FCC has interpreted. The city blithely assumes its interest is the same as the public interest. It's not. I would suggest to this court that the paramount interest that should be enforced here is the federal government's interest in TCA to get rid of barriers to competition, just like the ones that the city has imposed now, and which, as Chief Judge Katzmann noted, bothered Mr. Goldsmith when he had not yet won the franchise. He was right. They violate TCA. Thank you very much, Your Honor. Thank you. Thank you all for your good arguments. This is the reserve decision. You'll give us your schedule.